THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* RANDALL J. MARCHESE, Defendant-Appellant.

(No. 74-251;

Second District (1st Division)—October 24, 1975.

Frank Wesolowski, Jr., Public Defender, of Wheaton (Robert H. Heise, Assistant Public Defender, of counsel), for appellant.

John J. Bowman, State's Attorney, of Wheaton (Malcolm F. Smith, Assistant State's Attorney, and James W. Jerz, of Illinois State's Attorneys Association, of counsel), for the People.

Mr. JUSTICE HALLETT delivered the opinion of the court:

The defendant was charged with rape and indecent liberties with a child, based on the same act. After a trial by jury, he was found guilty of indecent liberties with a child but not guilty of rape and was sentenced to 4 to 12 years' imprisonment. On appeal. he raises 14 issues, none of which warrant a reversal. We therefore affirm the judgment.

The defendant was indicted for the offense of rape in that he did knowingly have sexual intercourse with the victim by force and against her will, and for the offense of indecent liberties with a child in that he did knowingly have sexual intercourse with the victim, who was under the age of 16. Both offenses charged in the indictment were based upon the same act of sexual intercourse.

At the trial, which commenced on October 29, 1973, the first witness was Charles R. Turcotte, Jr., a chemist for the Du Page County Sheriff's Office, who testified that he received certain items of clothing from Officer Dalbey. He also testified that, upon analysis, human blood was found on the inside zipper of a pair of men's pants, which later were identified as worn by the defendant. Analysis of a pair of blue jean cut-off pants, worn by the victim, disclosed a blood stain in the crotch area.

The next witness, the mother of the victim, testified that on July 9,

1972, the date the offense occurred, her daughter was 14 years of age. She also testified that, in her opinion, her daughter looked only 14 years old at the time of the offense. On cross-examination, the witness stated that the victim associated with persons between the ages of 14 and 18.

Next, the victim testified that on the afternoon of July 9, 1972, she was walking along Route 59, and a yellow and black Mustang pulled up and stopped near her. The driver was the defendant and another man was with him. They offered her a ride and she got into the car. They first drove to Crystal Lake where the defendant picked up some clothes. They then stopped at an apartment and one Sharon Fuller and her son joined them, and they all drove to a house in Downers Grove. The defendant then asked the victim to help him carry his clothes into the house, which she did. Although she told him that she didn't want a beer, he gave her one anyway and she drank part of it. As she was sitting in a chair, the defendant said, "You're going to get laid," ordered her into the bedroom, and refused to let her leave. After she entered the bedroom, the defendant ordered her to take off her clothes and, when she refused, began taking them off, assisted by Sharon Fuller, who also disrobed herself. The defendant then had sexual intercourse with the victim, being on her for some 10 or 15 minutes, during which he slugged her in the face when she continued to resist. When the defendant and Sharon Fuller were in another room, the victim escaped, clad in a man's black suit, which was an exhibit. She ran to a car leaving an adjoining driveway and told the driver that she had been raped and he took her to the Downers Grove Police Station, where she related the incident, identified the location of the house and identified the defendant.

The next witness, Michael McDaniels, who had driven the victim to the Downers Grove Police Station, testified that the victim had run from a nearby house toward his car and said, "Please help me, I've been raped." The witness testified that the victim was upset and crying.

The State then called the mother of the defendant as a witness and she testified that the defendant was 30 years old at the time the offense was committed. The defendant's mother was later called as a witness for the defense.

David Dalbey of the Downers Grove Police Department testified that he was present when the victim entered the station and said that she had been raped. He observed that she was visibly upset and had some marks on her face.

Hartmut Steinmeyer, one of the arresting officers, testified that, at the time of the arrest, he informed the defendant of his in custodial rights and that the defendant indicated that he understood them. He also testified that the defendant did not make a statement at that time.

Officer Compton, one of the officers who executed a search warrant of the premises, described the clothing of the victim found therein. He further testified that, in his opinion, the victim appeared to be 13 or 14 years old.

The testimony of Nikki Gentile, a passenger in the car of Michael McDaniels, essentially corroborated the testimony of Mr. McDaniels. He further testified that the victim appeared disoriented and that, in his opinion, the victim appeared to be older than 14 years of age.

Dr. Frisina, the physician who examined the victim shortly after the incident occurred, testified that the victim's hymen had been ruptured and that she complained of tenderness in the area of her face.

The medical technician at the hospital where Dr. Frisina examined the victim, testified that the slides given to him by Dr. Frisina indicated the presence of sperm.

The defense called Lieutenant Robert Muir of the Downers Grove Police Department, who testified that after observing the victim for a period of time, he was of the opinion that she was "a juvenile, a very young girl," although his initial impression had been that she appeared older than 14 years of age.

Anthony Marchese, the defendant's brother, who was 14 years old at the time the incident occurred, testified that he had observed the victim in his brother's car parked in the driveway of his home and had invited her into his home. In his opinion, the victim appeared to be 17 to 19 years old.

LaVerne Marchese, mother of the defendant, testified that on July 9, 1972, she observed the victim sitting in the back seat of the defendant's automobile, which was parked in the driveway of the Marchese home. She testified that at that time she believed that the victim was at least 18 years old.

The jury found the defendant not guilty of rape but guilty of indecent liberties with a child and the court sentenced the defendant to a term of 4 to 12 years' imprisonment.

On appeal, the defendant contends, *inter alia*, that he was not proven guilty beyond a reasonable doubt. He says that substantial evidence was presented that he reasonably believed the victim to be 16 years of age or older. Further, he argues that the reasonable belief of the defendant is an affirmative defense to the offense of indecent liberties with a child, which must be negated by the State and that the State failed to do so. Therefore, he contends that the State failed to prove him guilty beyond a reasonable doubt.

■■ Having reviewed the entire record, we conclude that the State satisfied its burden of proof. The State was not required to produce

rebuttal witnesses to testify that the victim appeared to be under 16 years of age. Rather, the in-court presence of the victim herself was sufficient to rebut the affirmative defense of the defendant's reasonable belief. The jury had the opportunity to observe the victim and to determine the reasonableness of the defendant's belief based on their own observations. Furthermore, the victim's mother and Officers Compton and Muir did testify that she appeared to be well under 16.

Moreover, the jury was instructed thoroughly on this matter by the trial judge. The pertinent instructions which were given to the jury follow.

> "It is a defense to the charge of indecent liberties with a child that, at the time of the commission of the act charged, the defendant reasonably believed that the child was of the age of 16 years or older.
>
> When I use either of the phrases 'reasonable belief' or 'reasonably believes' I mean that the person concerned, acting as a reasonable man, believes that the described facts exist.
>
> To sustain the charge of indecent liberties, the State must prove the following propositions:
>
> FIRST: That the defendant performed an act of sexual intercourse with [the victim]; and
>
> SECOND: The defendant was then 17 years of age or older; and
>
> THIRD: That [the victim] was then under the age of 16 years; and
>
> FOURTH: That the defendant did not reasonably believe that [the victim] was of the age of 16 years or older.     *   *   *"

Given these instructions, the jury considered the reasonableness of the defendant's belief, determined from all the evidence that his belief, was unreasonable, and found him guilty beyond a reasonable doubt of indecent liberties with a child.

A court of review will disturb the jury's finding only when the evidence is so unreasonable, improbable, or unsatisfactory as to justify a reasonable doubt of the defendant's guilt. (*People v. Crews* (1967), 38 Ill.2d 331, 335, 231 N.E.2d 451; *People v. Nicholls* (1969), 42 Ill.2d 91, 95, 245 N.E.2d 771.) In the case at bar, in view of the instructions to the jury, the testimony of the witnesses, and the jury's ability to observe the victim, we conclude that the defendant was proven guilty beyond a reasonable doubt.

The defendant next contends that the trial court unduly restricted the cross-examination of the victim's mother by sustaining the State's objections to the following questions.

"Have you ever heard from anybody that she appeared to be older than her age?

Apparently, she was a satisfactory companion, then, for young people three or four years older than she was. Is that right?"

■■ Although the defendant recognizes the general rule that an affirmative defense is not properly developed on cross-examination, he argues that he was substantially prejudiced in presenting his defense of reasonable belief that the victim was 16 years old because objections to these two questions were sustained.

■■ While wide latitude is allowed in cross-examination, the scope of cross-examination is within the discretion of the trial court, and the trial court's determination will not be disturbed in the absence of an abuse of discretion or a substantial prejudice to the defendant. In the case at bar, the testimony sought would obviously have been hearsay and the defendant was in no manner precluded from calling the victim's mother as a hostile witness during its case-in-chief to elicit testimony regarding the victim's apparent age. Moreover, other witnesses, including those called on behalf of the State, were permitted to testify that, in their opinion, the victim appeared older than her actual age. Consequently, we conclude that the trial court did not unduly restrict cross-examination of the victim's mother, and that the defendant was not prejudiced in presenting his defense of reasonable belief that the victim was 16 years of age or older.

The defendant next contends that the admission of the testimony of the victim, Officer Dalbey, Nikki Gentile, and Michael McDaniels that the victim stated, "I've been raped," constitutes reversible error. The defendant argues that although the victim's prompt complaint is admissible in a rape case, it is not admissible where the charge is indecent liberties with a child. Further, the defendant argues that although defense counsel did not object to this testimony, it substantially prejudiced the defendant's rights, and consequently, we should consider the question on appeal.

We note that, in the case at bar, the defendant was indicted for the offenses of both rape and indecent liberties with a child. In view of the victim's testimony that she did not consent to the act of intercourse, the charge of rape was made in good faith and was not brought merely to enable the State to introduce evidence which otherwise may have been inadmissible.

■■ As the defendant concedes, it is well established that a trial court is not required to exclude improper evidence when the defendant does not object or move to exclude it. (*People v. Summers* (1973), 12 Ill. App.3d 893, 899, 299 N.E.2d 462.) In the case at bar, not only did

defense counsel fail to object to the testimony that the victim stated she had been raped, but also defense counsel himself, on cross-examination of Mr. McDaniels pursued the question of what the victim had told him. Thus, defense counsel not only failed to object to the testimony elicited during direct examination by the State, but also elicited such testimony himself and failed to move that the answer be stricken as unresponsive.

Moreover, a review of the record discloses no substantial prejudice to the defendant by the admission of testimony regarding the victim's prompt complaint. The evidence produced against the defendant on the indecent liberties charge was overwhelming. Further, the jury found the defendant not guilty of rape. We conclude that the admission of testimony regarding the victim's prompt complaint did not substantially prejudice the defendant and does not constitute reversible error.

■■ The defendant's fourth contention is that the trial court erred in denying the defendant's motion to require the State to sever the charges, which were based on a single act of the defendant. In denying the motion, the court found that the defenses of consent and of reasonable belief that the victim was 16 years old were not inconsistent, and that the defendant would not be prejudiced by a single trial on both offenses. The defendant argues on appeal that he was prejudiced by the single prosecution since evidence of the victim's prompt complaint, which is generally admissible only in rape cases, was admitted in the trial.

We have concluded above that the defendant was not prejudiced by the admission of the evidence of the victim's prompt complaint. Further, we agree with the trial court that there was no inconsistency in the respective defenses. We therefore conclude that the single prosecution for rape and for indecent liberties with a child was entirely proper.

The defendant next contends that the following testimony of Officer Steinmeyer violated the defendant's privilege against self-incrimination and constitutes prejudicial error.

"A. I gave him his rights. Q. By giving him his rights, Officer, what do you mean? A. I took a card from my wallet that I carry in my uniform and read him the statement of rights. Q. And without reading the statement of rights, briefly, what does that include? A. You have the right to remain silent. Anything you say can and will be used against you in a court of law. You have the right to an attorney. If you can't afford an attorney one will be appointed for you by the court. And do you understand all of these directions. Q. Did he understand—did he indicate that he understood those rights? A. Yes. Q. At that time did he made a statement to you? A. No."

■ It has been held that testimony that the defendant refused to make a statement is error. (*People v. Rothe* (1934), 358 Ill. 52, 192 N.E. 777; *People v. Lewerenz* (1962), 24 Ill.2d 295, 299, 181 N.E.2d 99; *People v. Woodall* (1970), 131 Ill.App.2d 662, 668, 264 N.E.2d 303.) However, such testimony must be viewed in the totality of the circumstances, including the extent of the testimony and the other evidence adduced at trial. In the case at bar, the testimony that the defendant did not make a statement upon arrest consisted of one line, which was preceded by a detailed explanation of the defendant's in custodial rights, including the defendant's right to remain silent. Moreover, the other evidence presented at the trial was overwhelming. While we agree that the admission of this testimony was error, we conclude that it was not prejudicial error in view of the extent of the testimony, the context in which the testimony was given, and the other overwhelming evidence. The testimony complained of could not have reasonably affected the result of the trial. *People v. Novak* (1967), 84 Ill.App.2d 276, 278, 228 N.E.2d 139; *People v. Gilyard* (1970), 124 Ill.App.2d 95, 107, 260 N.E.2d 364.

The sixth issue raised on appeal is that the defendant was denied due process of law by the State's failure to furnish statements of Sharon Fuller, a potential witness, pursuant to the court's discovery order. The State's list of witnesses, which initially did not list Sharon Fuller, was amended prior to trial to include her. From this fact, the defendant infers that there existed written statements made by Sharon Fuller, which were not furnished to the defendant. The defendant also argues that he was precluded from calling Sharon Fuller as a witness on his behalf since he was uninformed of her purported statement made either to police officers or to the State's Attorney.

■■ This argument is totally unsubstantiated by the record, which contains no indication that Sharon Fuller made any statements whatsoever. We note that Sharon Fuller was not called as a witness by the State. Further, the defendant was not precluded from calling Sharon Fuller as a witness since the State could not have used in any manner a purported statement made by the witness which had not been disclosed in its answer to the discovery order. We therefore conclude that the defendant's contention is unfounded.

The defendant next contends that at the preliminary hearing, the trial court erroneously denied his motion for a continuance and for the dismissal of his court-appointed counsel. At the preliminary hearing, the court denied the defendant's oral motion for a continuance and for dismissal of counsel and proceeded with the preliminary hearing, during which defense counsel effectively cross-examined the victim. Although the defendant states that counsel at the preliminary hearing was com-

petent, he nonetheless argues that he was denied due process of law, and in support of his contention, he cites *People v. Green* (1969), 42 Ill. 2d 555, 248 N.E.2d 116, wherein the court held that the right to counsel includes the right to counsel of one's own choice. Based on *Green*, the defendant argues that since the preliminary hearing is a critical stage in the criminal process requiring the assistance of counsel (*Coleman v. Alabama* (1970), 339 U.S. 1, 26 L.Ed.2d 387, 90 S.Ct. 1999), he was entitled to counsel of his own choice at the preliminary hearing, and that consequently, his motion was erroneously denied. Further, the defendant contends that he was prejudiced in preparing his defense for trial by the denial of his motion.

The defendant's reliance on *People v. Green* is misplaced. In *Green*, the defendant indicated that he had privately retained counsel. In the case at bar, the defendant did not have privately retained counsel, but rather requested the court to appoint different counsel without establishing any grounds for the dismissal of his present court-appointed counsel. See *People v. MacArthur* (1971), 2 Ill.App.3d 1077, 1080, 278 N.E.2d 530; *People v. Edmondson* (1975), 30 Ill.App.3d 763, 767-768, 332 N.E. 2d 493.

It is well established that:

"'The granting of a continuance to permit preparation for a case, or for the substitution of counsel, necessarily depends upon the particular facts and circumstances surrounding the request, and is a matter resting within the sound judicial discretion of the trial court.' (*People v. Solomon*, 24 Ill.2d 586, 589; see also *People v. Davis*, 45 Ill.2d 514; *People v. Latimer*, 35 Ill.2d 178, 181.)" (*People v. Canaday* (1971), 49 Ill.2d 416, 427, 275 N.E.2d 356.)

See also Ill. Rev. Stat. 1973, ch. 38, par. 114—4(e).

■■ After carefully reviewing the record, we conclude that the trial court did not abuse its discretion in denying the defendant's motion for a continuance and for dismissal of court-appointed counsel at the preliminary hearing. The defendant's motion did not establish any valid basis for the dismissal of counsel and was dilatory in nature. Further, we conclude that the defendant was in no manner prejudiced by the denial of his motion. The record discloses that at the preliminary hearing, defense counsel thoroughly and effectively cross-examined the victim and was well prepared. Moreover, the defendant concedes that he was represented by competent counsel at the preliminary hearing and has failed to establish any prejudicial effect of the denial of his motion. We therefore conclude that the court did not err in denying the defendant's motion for a continuance and for dismissal of counsel, and that the defendant was not thereby denied due process of law.

The defendant next contends that the indictment failed to allege the proper mental state for the offense of indecent liberties with a child, and that, consequently, the indictment was fatally defective. The indictment states that the defendant committed the offense of indecent liberties with a child "in that he, a person of the age of 17 years and upwards, did knowingly perform the act of sexual intercourse with a female [victim's name], a child under the age of 16 years, in violation of Illinois Revised Statutes, 1971, Chapter 38, Section 11—4(a)(1) * * *."

■■ The defendant argues that the requisite mental state for the offense charged is specific intent, and in support of this contention, cites *People v. Freedman* (1954), 4 Ill.2d 414, 419, 123 N.E.2d 317, wherein the court stated that specific intent was an essential element of the offense.

Defendant's reliance on *Freedman* is misplaced, for in *Freedman* the statute defining the offense required "that the act be done *'with the intent* of arousing, appealing to or gratifying the lust or passions or sexual desires, either of such person or of such child, or of both such person and such child.' (Ill. Rev. Stat. 1953, chap. 38, par. 109.)" (*People v. Freedman* (1954), 4 Ill.2d 414, 419, 123 N.E.2d 317.) (Emphasis added.) Under the present statute defining the offense of indecent liberties with a child, specific intent is an essential element only if the defendant is charged with violating section 11—4(a)(3) of the Criminal Code (Ill. Rev. Stat. 1971, ch. 38, par. 11—4(a)(3)), which is similar to the statute violated in *Freedman*.

In the case at bar, the defendant is *not* charged with violating section 11—4(a)(3) of the statute, but rather with violating section 11—4(a)(1) of the statute, which does not prescribe a particular mental state. If the statute defining an offense does not prescribe a particular mental state, any mental state defined in sections 4—4, 4—5, or 4—6 of the Criminal Code is applicable. (Ill. Rev. Stat. 1971, ch. 38, par. 4—3(b).) In the case at bar, the indictment alleges that the defendant "did knowingly perform the act of sexual intercourse" with the victim. Thus, the mental state defined in section 4—5 (Ill. Rev. Stat. 1971, ch. 38, par. 4—5), knowledge, was alleged in the indictment. We therefore conclude that a proper mental state was alleged in the indictment and that the indictment was not fatally defective.

The defendant's next argument is that the use of the word "knowingly," in the indictment lessened the State's burden of proof. Here again, defendant has argued as his basic premise that specific intent is a requisite element of the offense charged. We have above concluded that specific intent is not a required element of the offense charged in this case, and that general intent is a sufficient mental state. The State's burden of

proof was not lessened by use of the word "knowingly," which was alleged properly in the indictment.

The defendant next contends that the State offered no proof of the defendant's mental state, and thus, failed to establish the mental element of the offense. This argument of the defendant is, in part, based upon his erroneous premise that specific intent is the requisite mental state for the offense charged. We have discussed the merits of this premise above, and here address ourselves to the question of whether the State proved that the defendant acted with knowledge, the mental state properly alleged in the indictment and defined in section 4—5 of the Criminal Code (Ill. Rev. Stat. 1971, ch. 38, par. 4—5).

■■ We note that, because of its very nature, the mental element of an offense is ordinarily established by circumstantial evidence, rather than by direct proof. (*People v. Faginkrantz* (1960), 21 Ill.2d 75, 80, 171 N.E.2d 5.) In the case at bar, the record discloses overwhelming evidence from which the jury could find that the defendant acted with knowledge. We therefore conclude that the mental element of the offense charged in the indictment was established by the State.

The defendant next contends that the trial court erroneously instructed the jury. Although neither the State nor the defense tendered a particular instruction on the mental element of the offense, the defendant argues that it was the duty of the trial judge to give *sua sponte* an instruction on intent. We note that the defendant has not seen fit to include in his brief a proposed instruction, which he argues the court should have given *sua sponte*.

■■ In *People v. Orr* (1962), 24 Ill.2d 100, 102, 180 N.E.2d 501, the court stated:

> "Defendant has little cause to complain about the court's failure to give more specific instructions since he did not see fit to tender instructions upon this point. As we have repeatedly stated, if an accused wishes certain instructions to be given he must request the court to so act, *since the trial judge is under no duty to give instructions upon its own motion. People v. Carvin*, 20 Ill.2d 32; *People v. Wilson*, 1 Ill.2d 178; *People v. Lindsay*, 412 Ill. 472." (Emphasis added.)

(See also *People v. Fox* (1971), 48 Ill.2d 239, 251, 269 N.E.2d 720.) We conclude that in the case at bar, the trial judge was under no duty to *sua sponte* instruct the jury on the mental element of the offense. Moreover, the instructions, which are quoted above, set forth the elements of the crime charged and adequately instructed the jury on the mental element of the offense. We therefore hold that the jury was properly instructed.

The defendant next contends that the sentence of 4 to 12 years' im-

prisonment is excessive, and argues that the trial court did not consider the defendant's potential for rehabilitation in imposing this sentence.

It is well established that the power of the court of review to reduce the punishment imposed by the trial court under Supreme Court Rule 615(b)(4) (Ill. Rev. Stat. 1973, ch. 110A, par. 615(b)(4)) should be exercised "with considerable caution and circumspection, for the trial judge ordinarily has a superior opportunity in the course of the trial and the hearing in aggravation and mitigation to make a sound determination concerning the punishment to be imposed than do the appellate tribunals." *People v. Taylor* (1965), 33 Ill.2d 417, 424, 211 N.E.2d 673.

■■ In the case at bar, the record reveals that a lengthy sentencing hearing was held, during which the State and the defense presented evidence in aggravation and mitigation, including evidence of defendant's potential for rehabilitation and his previous convictions. At the conclusion of the hearing, the court imposed a lesser sentence than that which had been recommended by the State's Attorney. Moreover, the court imposed the absolute minimum sentence prescribed by law for the offense of indecent liberties with a child. In view of the foregoing, we conclude that the defendant's contention that the trial court failed to consider the defendant's potential for rehabilitation is unsubstantiated by the record, and that the sentence imposed by the trial court was proper.

The defendant next argues that the State was under a duty to inform the court of the sentence imposed on Sharon Fuller, the codefendant, and that he therefore was denied due process of law at the sentencing hearing. In *People v. Haynes* (1971), 132 Ill.App.2d 130, 132, 266 N.E.2d 172, 174, this court stated:

> "Fundamental fairness and the creating of a respect for law require that defendants who are similarly situated may not receive grossly disparate sentences. However, a defendant has the burden of furnishing a record in mitigation from which a rational comparison may be made. (See *People v. Wittington* (1970), 264 N.E.2d 1, 3.)"

In attempting to distinguish *Haynes*, the defendant has argued in his brief that, unlike *Haynes*, he does not contend that his sentence is excessive when compared with that of the codefendant, and that consequently, he did not have the burden of informing the court of the codefendant's sentence.

Under section 5—4—1(b) of the Unified Code of Corrections (Ill. Rev. Stat. 1973, ch. 38, par. 1005—4—1(b)), the defendant *or* the state's attorney *may* advise the court of the disposition of any other defendants who have been sentenced. The language of the statute is

permissive, not mandatory, and imposes no duty upon either defense counsel or the state's attorney to inform the court on this matter. The defendant does not suggest, nor does the record reveal, that the State withheld this information from the defendant or that this information was inaccessible to defendant or counsel. Moreover, the defendant has not established that he was prejudiced by the court's lack of information concerning the codefendant's sentence. Indeed, the defendant has asserted that he does not contend that his sentence is excessive when compared with that of the codefendant. We conclude that the State was not under a duty to inform the court of the codefendant's sentence and that the failure of the State to so inform the court did not deprive the defendant of due process of law.

■■ The defendant finally contends that since the offense occurred prior to the effective date of the Unified Code of Corrections, he was improperly sentenced under the Code, which provides a greater penalty than prior law for indecent liberties with a child. Under the Unified Code of Corrections, the minimum sentence for indecent liberties with a child, a Class I felony, is 4 years, and the maximum sentence is any term in excess of 4 years. (Ill. Rev. Stat. 1973, ch. 38, par. 1005—8—1 (b)(2), (c)(2).) In addition, the Code provides for a 5-year parole term for a Class I felony. (Ill. Rev. Stat. 1973, ch. 38, par. 1005—8—1 (e).) Under the prior law, the minimum sentence for the offense is 4 years, and the maximum sentence is 20 years. (Ill. Rev. Stat. 1971, ch. 38, par. 11—4(c).) In the case at bar, since the offense was committed under prior law and the sentence prescribed under the Unified Code of Corrections is greater than under the prior law, the Code does not apply and the defendant should be sentenced under the prior law. *People v. Brooks* (1973), 13 Ill.App.3d 1003, 1008, 301 N.E.2d 496.

After examining the record, which fails to disclose with certainty the law under which the defendant was sentenced, we cannot conclude that the defendant's sentence was improperly imposed under the Code. Rather, we conclude that the sentence of 4 to 12 years' imprisonment imposed by the court was entirely proper under the prior law. Further, since the sentencing order fails to specify that the sentence was imposed under the Code and since it does not indicate the applicability of a 5-year parole term in accordance with the Code, we shall presume that the terms of the defendant's parole are controlled by prior law. See Ill. Rev. Stat. 1973, ch. 38, par. 1003—3—8(a).

We therefore affirm the judgment.

Affirmed.

SEIDENFELD, P. J., and GUILD, J., concur.