THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.*
OATES BERNARD DARBY, Defendant-Appellant.

Second District   No. 76-551

Opinion filed March 22, 1978.

Ralph Ruebner and Alan D. Goldberg, both of State Appellate Defender's Office, of Elgin, for appellant.

Daniel D. Doyle, State's Attorney, of Rockford (Phyllis J. Perko and Martin P. Moltz, both of Illinois State's Attorneys Association, of counsel), for the People.

Mr. JUSTICE GUILD delivered the opinion of the court:

The defendant herein was charged with rape (Ill. Rev. Stat. 1975, ch. 38, par. 11—1), and indecent liberties with a child (Ill.Rev. Stat. 1975, ch. 38, par. 11—4(a)(1)), based upon the same act which occurred on December 4, 1975. Prior to his trial the defendant made a "motion to elect count" which was treated by all concerned as a motion for a severance of counts. This motion alleged that the State would introduce evidence of the victim's prompt complaint, which would be prejudicial to the indecent liberties count. The motion was denied. A jury found the defendant not guilty of rape but guilty of indecent liberties. He was sentenced to 4-8 years in the penitentiary.

The defendant raises three major issues. Initially, he contends that the trial court erred in not severing the two counts of the indictment and therefore allowing the admission of testimony allegedly not admissible as to the indecent liberties charge. Next, the defendant argues that the admission of testimony dealing with his possession of a small quantity of marijuana on the day of the alleged offense was plain error and mandates reversal. Finally, the defendant raises a three-pronged argument attacking the sentence imposed upon him. First he contends that the trial judge arbitrarily denied him probation and/or periodic imprisonment. Secondly, he argues that the sentence imposed by the trial court should be reduced by this court to one of periodic imprisonment. The final issue raised is that the defendant's maximum sentence is excessive and should be reduced.

At trial the complainant testified that she was 14 years old on December 4, 1975, and that she was speaking on the telephone in the kitchen of her home at 6 p.m. on that date. The defendant arrived at the door and asked for the complainant's older sister. After being informed that the older sister was not home, the defendant entered, sat down in the kitchen and told the complainant to hang up the telephone. The complainant testified that the defendant ordered her to come to him and when she refused, he pulled her to him and sat her upon his knee. The defendant then got up and pulled the complainant into a bedroom, threw her on the bed and forcibly removed her pants. She then testified that she struggled until she tired, at which point the defendant made vaginal penetration and she then renewed her struggles. After the defendant completed an act of intercourse, the complainant dressed, ran to the telephone and attempted

to dial, until the defendant broke the connection. She procured a kitchen knife and attacked the defendant, who disarmed her and then fled to his car. She then testified that she made a telephone call to her older sister at a friend's home. The older sister returned home and the complainant "told her what happened."

On cross-examination the complainant testified that she had known the defendant for several years and that he was a friend of her older sister's boyfriend. She also testified that he had touched her on several occasions but that she had never "fooled around" with him.

Dr. Valentine Ploplys testified that he examined the complainant at 9:30 p.m. on December 4, 1975. He stated that he saw no evidence of physical injury. He further stated that the complainant's hymen had been ruptured, but not recently, and that sperm was found to be present.

The older sister of the complainant testified that the defendant was a friend of her boyfriend, and that she had known him for two to four years. She further stated that on December 4, 1975, between 6 and 6:30 p.m., she had called the defendant from a girlfriend's home and requested that he deliver a marijuana cigarette to her home. This testimony was admitted without objection. The sister then testified that she received a phone call from the complainant at about 6:45 p.m. and had returned home. There she found her sister crying. The complainant then told her that she had been raped. Objection was raised to this statement and was denied. The sister further testified that she had told the defendant during the summer of 1975 that the complainant was 14 years old.

Rockford police detective William Bland testified that he had taken a written statement from Oates Darby on the morning of December 5, 1975. The statement was then admitted into evidence and read to the jury at the close of the State's case. The defendant related therein that he was 25 years of age. The statement did relate that he had gone to the complainant's home on December 4, 1975, after her sister had called and asked for a "reefer." The statement further related that the defendant's girlfriend had accompanied him to the complainant's home but had stayed in the car. The defendant related in his statement that he did rub the complainant's breasts and buttocks but denied having intercourse with her. He stated that when he refused to let the complainant drive his car she chased him from the house with a knife.

The defense presented Billy Fred Shoulders, a friend of the defendant and the former boyfriend of the complainant's sister, who testified that the complainant had several times tried to get the defendant's amorous attention.

The defendant testified that he had known the complainant for two years, during which time she would often plead with him to drive his car.

He further stated that on December 4, 1975, he had arrived at the complainant's home and conversed with her. He testified that he began to "play" with her and proceeded to have sexual intercourse, with her cooperation and without any resistance. He testified that after he completed the sexual act, the complainant asked to drive his car and upon his refusal, she grew very angry, ordered him out of the house and attempted to make a phone call. When he stopped her, the complainant went after him with a knife and, after disarming her, he left. Finally, the defendant testified that he thought the complainant was 16 years of age and that he had once asked her how old she was, to which she had . allegedly replied, "old enough."

On cross-examination the defendant admitted that he had gone to the complainant's home to deliver a marijuana cigarette to the complainant's sister. There was no objection to this line of questioning by the defense. The defendant further admitted giving the written statement to the police and acknowledged that the part therein where he stated that his girlfriend, Phyllis Brown, had accompanied him to the complainant's home was not a fact.

■■■ We turn first to whether reversible error was committed under the circumstances of this case by the joint trial of the rape and indecent liberties counts. The basis of the defendant's contention is the case of *People v. Romano* (1923), 306 Ill. 502, 138 N.E. 169. In *Romano* the supreme court held that evidence of a prompt complaint but not the substance thereof, is admissible in rape cases. It went on to hold that to admit such evidence in cases of indecent liberties was reversible error. The defendant contends that the trial court should have granted his motion to "elect" counts, and since such motion was not granted, and testimony showing prompt complaint of rape was indeed admitted over objection, that the conviction of indecent liberties with a minor should be reversed and the case remanded. We have carefully examined this matter and conclude that no prejudice whatsoever accrued to the defendant which would mandate a reversal on these grounds. At the time of the *Romano* case, in 1923, the statutory offense known as "rape" included, by definition, sexual acts now prohibited by section 11—1 of the Criminal Code of 1961 (Ill. Rev. Stat. 1975, ch. 38, par. 11—1), as well as sexual acts now prohibited by section 11—4(a)(1) (Ill. Rev. Stat. 1975, ch. 38, par. 11—4(a)(1)). The statutory offense known in 1923 as "indecent liberties" dealt with sexual acts now prohibited by section 11—4(a)(3) (Ill. Rev. Stat. 1975, ch. 38, par. 11—4(a)(3)). We hold that the rule in *Romano*, which found the admission of prompt complaint in indecent liberties cases to be reversible error, applies under the present Criminal Code to cases only where the defendant is charged with indecent liberties under sections 11—4(a)(2) or 11—4(a)(3). Since the conduct now prohibited by

section 11—4(a)(1) was, in 1923, included in the statute pertaining to rape, evidence of prompt complaint would have been admissible, under *Romano*, in prosecutions therefor. Thus, we find that prompt complaint is admissible today, under the *Romano* rule, in prosecutions brought under section 11—1 or 11—4(a)(1) of the Criminal Code. Our finding in this regard specifically does not apply to prosecutions brought under any other section of the Criminal Code which is historically unconnected with the crime of rape.

■■■ The second contention of the defendant is that plain error was committed in that evidence of the crime of possession of marijuana was introduced at his trial and that such evidence was irrelevant and inflammatory. We observe from our review of the record that not only did defense counsel fail to object to this testimony now complained of, but that he personally elicited similar testimony during his cross-examination of the complainant's sister. This being the case, we find that the defendant, through his trial counsel, waived any objection to the testimony concerning his possession of the single marijuana cigarette. (See *People v. Realmo* (1963), 28 Ill. 2d 510, 192 N.E.2d 918; *People v. Jones* (1975), 32 Ill. App. 3d 354, 336 N.E.2d 583.) Assuming that the defendant had not waived objection to this testimony, we nonetheless hold that it had a definite relation to the continuing narrative of events of the evening of December 4, 1975. (See *People v. Marose* (1957), 10 Ill. 2d 340, 139 N.E.2d 735.) This evidence tended to show the close congruence in time between the older sister's call to the defendant requesting the marijuana and his arrival at the complainant's home. It also showed that the defendant more likely than not did visit the complainant's home in making the delivery and helped to establish his identity. Furthermore, we find that the testimony introduced here, to-wit: the possession of a single marijuana cigarette by the defendant, did not deprive the defendant of a fair trial by prejudicing the jury and tipping the scales against him in a close case, particularly since the other evidence against the defendant is overwhelming. (*Cf. People v. Novak* (1965), 63 Ill. App. 2d 433, 211 N.E.2d 554.) Finally, the question of whether plain error exists is within the sound discretion of the appellate court. (Ill. Rev. Stat. 1975, ch. 110A, par. 615(a); *People v. Robinson* (1968), 98 Ill. App. 2d 285, 240 N.E.2d 397.) We do not find the existence of plain error upon these grounds.

We turn now to the contentions regarding defendant's sentence. As to the alleged arbitrary denial of probation and periodic imprisonment, we are limited in our review to a determination of whether the trial court exercised its discretion or acted arbitrarily. (See *People v. Bolyard* (1975), 61 Ill. 2d 583, 338 N.E.2d 168; *People v. MacRae* (1977), 47 Ill. App. 3d 302, 361 N.E.2d 685.) To make this determination we have carefully examined the statement of the trial judge made before passing sentence.

We find there that the trial judge did express a certain lack of sympathy for anyone who had sexual relations with a 14-year-old girl. However, we cannot say from this record that the trial judge created an arbitrary category of offender, into which the defendant fit, and denied him probation. To the contrary, it is clear to us from this record that the trial judge was operating within the probation statute (Ill. Rev. Stat. 1975, ch. 38, par. 1005—6—1(a)(3)), and was of the opinion that probation or conditional discharge of this defendant would depreciate the seriousness of the offender's conduct and would be inconsistent with justice. Accordingly, we do not find fault with the denial of probation herein.

■■ The defendant was denied a periodic imprisonment under section 5—7—1 of the Unified Code of Corrections (Ill. Rev. Stat. 1975, ch. 38, par. 1005—7—1) by implication in that the court did not mention considering such a sentence in its statement on the record. However, we do not find that the trial court must therefore have acted arbitrarily. We know of no requirement that a trial court, on sentencing, must utter some magical formula or incantation regarding periodic imprisonment. Nor do we find any merit to the suggestion made by the defendant that the failure of the trial court to mention periodic imprisonment supports his earlier contention regarding arbitrary denial of probation.

As to the contention regarding the reduction of his sentence to periodic imprisonment, this court has already taken a position on this issue. Unfortunately for the defendant, our holding in *People v. McGee* (1977), 49 Ill. App. 3d 205, 364 N.E.2d 107, precludes this court from modifying the 4-8 year sentence of imprisonment imposed herein to a sentence of periodic imprisonment. See also *People v. DeBates* (1974), 18 Ill. App. 3d 663, 310 N.E.2d 228.

■■ Finally, it is contended by the defendant, in closing, that his sentence was excessive. The supreme court of this State has recently held, in *People v. Perruquet* (1977), 68 Ill. 2d 149, 368 N.E.2d 882, that the length of a prison sentence is a matter of judicial discretion which will not be disturbed unless that discretion is clearly abused. In this case we do not find the sentence of 4-8 years in the penitentiary manifestly excessive, or a clear abuse of judicial discretion. Accordingly, we will not tamper with it.

For the foregoing reasons, the judgment of the trial court is affirmed.

Affirmed.

RECHENMACHER and WOODWARD, JJ., concur.