THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* ANTHONY HERNANDEZ, Defendant-Appellant.

First District (2nd Division)    No. 79-1457

Opinion filed September 16, 1980.

James Doherty, Public Defender, of Chicago (Ina S. Marks and Frances Sowa, of counsel), for appellant.

Bernard Carey, State's Attorney, of Chicago (Marcia B. Orr, Richard F. Burke, and James R. Carroll, Assistant State's Attorneys, of counsel), for the People.

Mr. JUSTICE STAMOS delivered the opinion of the court:

Defendant Anthony Hernandez, age 25, was indicted for rape, deviate sexual assault, and two counts of indecent liberties with a child. The indecent liberties counts were based on the same acts which support the rape and deviate sexual assault charges. Following a bench trial, defendant

was convicted of indecent liberties with a child, and sentenced to a term of four to six years in the Illinois Department of Corrections. Defendant appeals, asserting that the evidence offered was sufficient to sustain a conviction for contributing to the sexual delinquency of a child, but insufficient to support a conviction for indecent liberties. Defendant also assigns as error trial court rulings that assertedly frustrated the development of defendant's affirmative defense, and admitted improper hearsay testimony.

Complainant in this case was 12 years old on July 8, 1977, the date of the occurrence. Complainant lived in Chicago in a first-floor apartment with her mother, her brother (age 9 at the time), and Elaine Legga, a friend of complainant's mother. On the evening of July 7, 1977, complainant's mother left the apartment to play bingo, accompanied by Elaine Legga and two other friends, Rose DiZoli and Pat Clemons. Pat Clemons at that time lived with defendant Anthony Hernandez; the two had argued earlier in the day, and Pat Clemons had come to the apartment with her 7-year-old son Tony that afternoon.

When the four women left the apartment to play bingo, complainant, her 9-year-old brother, and 7-year-old Tony remained. The two boys retired to a rear den; complainant watched television until midnight, then went to bed. What happened next is in dispute. Complainant testified that she first heard knocking on a front window of the apartment, and then heard a noise in the rear as defendant entered through a window in the rear den where the two boys were sleeping. Defendant testified that he knocked at the front window of the apartment, and that complainant admitted him through the front door. In either event, complainant, clad in a T-shirt and panties, first encountered defendant in the hall. Complainant had known defendant for about 1½ years, as Pat Clemons and complainant's mother were friends. Defendant inquired as to Pat Clemons' whereabouts and looked around the apartment.

Three versions of what next transpired were offered into evidence. According to complainant's testimony, defendant took her by the arm, led her into her mother's bedroom, put an arm around her waist, and reached into her panties with his free hand. Complainant protested, "No, Tony," but did not shout or attempt to wake the two boys. Against complainant's oral protests, defendant removed her clothing, disrobed, and told her to lie on the bed. Defendant then lay on top of her and performed sexual intercourse. Defendant next told complainant to lie on the floor, where he performed acts of oral and anal intercourse. The entire sequence lasted only a few minutes. When he had finished, defendant asked complainant for a drink; she first brought water, then rum. Defendant finished his drink, said, "Don't tell Pat," kissed complainant, and left.

Defendant took the stand and maintained that nothing improper had

occurred on the night in question. He testified that he had been drinking that night, and had come to the apartment looking for Pat Clemons. He knocked loudly at the front window, and was admitted by complainant, clad only in her underwear. Defendant testified that he looked around the apartment, inquired concerning Pat's whereabouts, and asked complainant for a drink. After finishing the drink, defendant left the apartment.

Assistant State's Attorney Henry Wolff testified to certain admissions made by the defendant. At 9:30 a.m. on July 8, 1977, Wolff interviewed defendant in a police station lockup. After being advised of his right to remain silent, defendant agreed to talk about the incident, and related to Wolff that complainant had admitted him into the apartment, and that they subsequently engaged in a conversation which turned to the subject of sex. The two then went into complainant's mother's bedroom, where they performed an act of sexual intercourse, after which defendant left the apartment. At trial, defendant did not remember talking to Wolff, and denied making an admission regarding the intercourse.

There is little dispute as to the events that followed. About 3 a.m., complainant's mother came home and went to bed. Pat Clemons came into the apartment with complainant's mother and went into complainant's room, where complainant told her of the incident with defendant. Complainant testified she was afraid to tell her mother at that time. Pat Clemons then went outside, where Rose DiZoli was waiting in a car, and Pat and Rose went out for coffee. Pat told Rose of complainant's charges, and both returned to the apartment about 5 a.m. Complainant then recounted the events to both Rose and Pat. At the same time, defendant returned to the apartment, knocking loudly on the front window. Complainant's mother awoke and answered the door. After an exchange of words concerning Pat and some money, defendant left, whereupon Pat told complainant's mother that defendant had just raped her daughter. The police were called, and defendant was arrested shortly thereafter at his apartment.

At trial, the evidence did not reveal that force was used in the assault complained of. Complainant's clothing was not ripped. A medical examination made about 5½ hours after the occurrence revealed a small laceration of the hymen, but no evidence of bleeding or other abrasions or marks of violence. Complainant's clothing and a vaginal smear tested negative for sperm.

Defendant sought to impeach the complainant's veracity by offering testimony from the preliminary hearing. This evidence revealed three points of conflict between complainant's trial testimony and her earlier statements. At the preliminary hearing, complainant stated that she followed defendant into the bedroom at his command (at trial she stated that defendant led her by the arm), and she told of defendant's pushing her onto the bed (at trial, she said she lay down at defendant's command). Also,

complainant's preliminary hearing testimony omitted reference to acts of oral and anal intercourse with defendant. Defendant also offered his uncorroborated testimony of two prior incidents, 6 months and 1 year earlier, when complainant made sexual overtures to defendant. This testimony amounted to vague accounts of complainant's resting her head in defendant's lap, and, on another occasion, saying, "Do you want to do it?" Defendant's statements are contradicted by complainant's testimony that she had never been alone with defendant.

On cross-examination of complainant and her mother, defendant raised the issue of complainant's credibility, citing the fact that complainant had received counseling because of "attitude" problems. Defendant attempted to show that complainant's problems were related to truthtelling. Pat Clemons, who married defendant subsequent to the incident and prior to the trial, testified for the defense. She stated that complainant had told her, "Tony hunched me." Pat Clemons ascertained from complainant that "hunch" meant "rape," but testified that complainant told her that defendant had put nothing inside her.

Defendant's first contention on appeal is that this court should reduce the conviction for indecent liberties with a child (Ill. Rev. Stat. 1975, ch. 38, par. 11—4) to contributing to the sexual delinquency of a child (Ill. Rev. Stat. 1975, ch. 38, par. 11—5). Defendant argues that the crime of indecent liberties requires the "victimization" of a child's immaturity by an adult, and if the facts show that the complainant is a willing participant, there has been no "victimization." Defendant points to his acquittal on the rape charge as an indication of the complainant's willing participation in the acts charged. Defendant urges this court to follow *People v. Plewka* (1975), 27 Ill. App. 3d 553, 327 N.E.2d 457, where a division of this court adopted reasoning similar to that advanced by defendant here, reversing a conviction for indecent liberties, but affirmed the conviction for contributing to the sexual delinquency of a child.

The facts in *Plewka* are readily distinguishable from those of the instant case. In *Plewka*, the complainant was nearly 16 years old, and the defendant 17 years old. Here, the complainant is 12 and the defendant 25. The age difference alone should create an inference of "victimization" that is not rebutted by mere absence of physical force. Further, defendant's evidence of earlier advances by complainant is too insubstantial to support his argument. Finally, we decline to infer a victim's "willing participation" in a sexual act from the defendant's acquittal of rape.

Even if we were to disregard the age difference between complainant and defendant, and, contrary to the evidence, assume a degree of sexual sophistication in the complainant, there would be sufficient grounds to reject defendant's argument. Notwithstanding the use defendant seeks to

make of the *Plewka* decision, the consent of the victim is irrelevant in indecent liberties cases. (*People v. Mullen* (1980), 80 Ill. App. 3d 369, 379, 399 N.E.2d 639.) Since consent is not relevant to the elements of the crime, we find it inappropriate to use "consent" or "willing participation" of the victim as a basis for reducing the degree of the offense.

■■ Nor is defendant's asserted lack of a "victimizing" state of mind relevant. Specific intent is called for in subsection (a)(3) of the indecent liberties statute, but no specific intent is applicable to subsections (a)(1) and (a)(2), under which defendant was indicted. (*People v. Marchese* (1975), 32 Ill. App. 3d 872, 882, 336 N.E.2d 795.) Inasmuch as the acts defendant is charged with fall within the statutory definition of indecent liberties with a child, this court declines to substitute its judgment for that of the trial court that found him guilty of that offense.

■■ Defendant's second contention is that the trial court denied him the opportunity to develop an affirmative defense. Defendant was charged with indecent liberties under section 11—4 of the Criminal Code of 1961 (Ill. Rev. Stat. 1975, ch. 38, par. 11—4), which permitted (subsection (b)(2)) the affirmative defense that the victim is a prostitute.[1] On cross-examination of the complainant, defendant inquired whether complainant was a virgin at the time of the incident. The trial judge sustained an objection to this question, and defendant made no attempt to continue this line of inquiry. On appeal, defendant contends that this ruling by the trial court frustrated his attempt to develop the affirmative defense of prostitution. This contention cannot stand. An affirmative defense is raised by the offer of "some evidence" thereon. (Ill. Rev. Stat. 1979, ch. 38, par. 3—2.) Defendant offered no other evidence on this point and made no offer of proof. Additionally, we note that an affirmative defense is not properly developed on cross-examination. (*People v. Marchese* (1975), 32 Ill. App. 3d 872, 878, 336 N.E.2d 795.) We conclude, then, that defendant did not effectively raise the affirmative defense of prostitution at trial, and defendant may not raise an affirmative defense for the first time on appeal. *People v. Abrams* (1971), 48 Ill. 2d 446, 458, 271 N.E.2d 37.

■■ Even if defendant could establish that his disallowed question was a good-faith attempt to raise the affirmative defense of prostitution, we find that the trial judge properly sustained the objection. The word "prostitute," for purposes of this affirmative defense, is to be afforded its customary meaning (*People v. Brown* (1971), 132 Ill. App. 2d 875, 877-78, 271 N.E.2d 395), and applying ordinary sense, we cannot equate lack of virginity with prostitution. Defendant's question was therefore immaterial to the affirmative defense, and the trial court's ruling was correct.

---

[1] A 1978 amendment to the Criminal Code of 1961 eliminated this affirmative defense. Ill. Rev. Stat. 1979, ch. 38, par. 11—4, as amended by P.A. 80-1392 (August 22, 1978).

Defendant also argues that complainant's virginal status is relevant to the degree of "victimization" present in the offense, and thus essential to his argument that his conduct only warrants conviction for contributing to the sexual delinquency of a child. This position implies that nonvirginal children are less likely to be victimized by sexual contact with adults, an implication that we reject. Moreover, we have already considered defendant's argument for reducing the degree of the offense, and found it inadequate.

Defendant's final contention relates to the admission of hearsay evidence. On direct examination, Rose DiZoli was asked what complainant said when Rose and Pat returned to the apartment. A defense objection was overruled, and Rose testified that, "she proceeded to tell me that she had been forced into sexual acts and that she was scared for her physical body and that she was sexually assaulted and orally assaulted." Defendant did not object to the next two questions, which elicited from Rose DiZoli complainant's out-of-court statement that the defendant was the assailant.

Evidence of the "prompt complaint" of a rape victim is a well-recognized exception to the hearsay rule. (*People v. Damen* (1963), 28 Ill. 2d 464, 472-73, 193 N.E.2d 25.) The "prompt complaint" is distinguishable from the "excited utterance" exception (see *People v. Poland* (1961), 22 Ill. 2d 175, 180-81, 174 N.E.2d 804), in that the statement of complaint need not be a spontaneous exclamation, but can be made after the excitement has subsided. (*People v. Damen* (1963), 28 Ill. 2d 464, 472-73, 193 N.E.2d 25.) The rationale behind the "prompt complaint" exception seems to be that, since consent is a defense to rape, it would be unjust to permit the fact finder to infer consent from the absence of evidence of a prompt complaint regarding the attack. For this reason, evidence that the prosecutrix made an outcry reasonably proximate to the event is admissible. See *People v. Damen* (1963), 28 Ill. 2d 464, 472, 193 N.E.2d 25.

Whether the "prompt complaint" hearsay exception applies to indecent liberties cases is another matter. *People v. Romano* (1923), 306 Ill. 502, 504, 138 N.E. 169, decided in 1923, held that admission of a victim's prompt complaint is permissible in a rape case but is reversible error in an indecent liberties case. However, as the court in *People v. Darby* (1978), 58 Ill. App. 3d 294, 297, 374 N.E.2d 229, points out, the indecent liberties statute applicable in 1923 is considerably different from the modern statute. The current indecent liberties statute (Ill. Rev. Stat. 1979, ch. 38, par. 11—4) proscribes acts that could also violate the rape statute (Ill. Rev. Stat. 1979, ch. 38, par. 11—1) or the deviate sexual assault statute (Ill. Rev. Stat. 1979, ch. 38, par. 11—3). The earlier statutory formulation allowed for no such overlapping. See Ill. Rev. Stat. 1923, ch. 38, pars. 109, 141, 490.

■■ Notwithstanding this distinction, some recent decisions in this State continue to adhere to the rule of *Romano*. (*E.g., People v. Buckley* (1976),

43 Ill. App. 3d 53, 55, 356 N.E.2d 1113; *People v. Smith* (1965), 55 Ill. App. 2d 480, 487, 204 N.E.2d 557, *aff'd after remand* (1967), 90 Ill. App. 2d 310, 234 N.E.2d 31, *cert. denied* (1971), 402 U.S. 945, 29 L. Ed. 2d 114, 91 S. Ct. 1623.) Other decisions have allowed evidence of prompt complaint in indecent liberties cases. (*E.g., People v. Dykes* (1978), 66 Ill. App. 3d 403, 412, 383 N.E.2d 1210; *People v. Darby* (1978), 58 Ill. App. 3d 294, 297, 374 N.E.2d 229.) Looking to the rationale for the "prompt complaint" hearsay exception, it is evident that its purpose is to foreclose the unwarranted inference of a consensual act. (See *People v. Damen* (1963), 28 Ill. 2d 464, 472, 193 N.E.2d 25.) Since the consent of the victim is irrelevant to the crime of indecent liberties with a child, evidence of the victim's prompt complaint should be inadmissible.

■■ The "prompt complaint" hearsay exception remains applicable, however, in rape cases. Where, as here, the defendant is charged with both offenses, there is no error in the admission of such evidence. We find the *Romano* result inconsistent with the contemporary formulation of the offense of indecent liberties and we turn instead to the accepted rule that evidence which is competent for one purpose does not become incompetent merely because it is inadmissible for another purpose. *Dallas v. Granite City Steel Co.* (1965), 64 Ill. App. 2d 409, 424, 211 N.E.2d 907.

In the instant case, however, defendant's principal objection is directed at the content of the hearsay statement, rather than the fact of its admission into evidence. Specifically, defendant asserts that Rose DiZoli's testimony related the complainant's statement in impermissible detail by including the name of the defendant. Defendant is correct on this point. The "prompt complaint" exception allows only for a recital of the fact of rape; any additional detail, including the attacker's identity, is not admissible. *People v. Damen* (1963), 28 Ill. 2d 464, 474, 193 N.E.2d 95.

■■ In the instant case, defendant made no timely objection to the admission of this evidence. Defendant objected as the witness was asked what complainant had said; this objection was overruled and Rose DiZoli gave an undetailed recital of the victim's complaint. When the next two questions asked the identity of the assailant, defendant did not object. Normally, an objection to the admission of evidence is waived if not timely made. (*People v. Trefonas* (1956), 9 Ill. 2d 92, 98, 136 N.E.2d 817.) Even if defendant's objection to the statement were not waived, however, the error would be harmless. The defendant is not prejudiced by the admission of incompetent evidence when the same fact has otherwise been proved by competent evidence. (See *People v. Robinson* (1978), 73 Ill. 2d 192, 200, 383 N.E.2d 164; *People v. Smith* (1978), 64 Ill. App. 3d 1045, 1049, 382 N.E.2d 298.) Here, the testimony of Rose DiZoli added nothing to the prosecution's case, since the defendant was present in the apartment that night by his own admission. The defense never challenged complainant's testimony as

to identity; only her credibility was questioned. Complainant's credibility was a question for the trier of fact. Her testimony was corroborated both by defendant's testimony that he came to the apartment that night, and by assistant State's Attorney Wolff's testimony regarding defendant's admissions made the same day. Given such evidence, we find the hearsay identification of the defendant harmless beyond a reasonable doubt.

The judgment of the trial court is affirmed.

Affirmed.

DOWNING and HARTMAN, JJ., concur.