THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. MICHAEL DANIELS *et al.*, Defendants-Appellants.

First District (3rd Division)    Nos. 82—1203, 82—1347 cons.

Opinion filed August 14, 1985.—Rehearing denied January 27, 1986.

Sam Adam, of Chicago, for appellant Michael Daniels.

Steven Clark and Phillip J. Zisook, both of State Appellate Defender's Office, of Chicago, for other appellants.

Richard M. Daley, State's Attorney, of Chicago (Michael E. Shabat, Jeanette Sublett, and Frank G. Zelezinski, Assistant State's Attorneys, of counsel), for the People.

JUSTICE McGILLICUDDY delivered the opinion of the court:

Following a jury trial, defendant Michael Daniels was found guilty of rape and indecent liberties with a child. The court directed a verdict of not guilty for aggravated kidnaping and Daniels was acquitted by the jury of attempted deviate sexual assault. Daniels' codefendants, Lazerick Collins and Joseph Wiggins, waived a jury trial. The court found them guilty of indecent liberties with a child. They were found not guilty of rape, of aggravated kidnaping and of attempted deviate sexual assault. All three defendants appeal.

Daniels contends that (1) the trial court erred in instructing the jury that he could be found accountable for rape by his codefendants where the same court acquitted them of that offense; (2) he was denied a fair trial where the cross-examination and attempted impeachment of a defense witness was not completed and left an inference that the witness was lying and (3) he was denied a fair trial because impeachment of his codefendant Wiggins indicated that Daniels was guilty of the offense. Collins and Wiggins contend that (1) the State failed to prove them guilty beyond a reasonable doubt of indecent liberties with a child; or, alternatively, that their convictions should be reduced to the offense of contributing to the delinquency of a minor because the victim reasonably appeared to be over 16 years of age and (2) they were denied a fair trial because they were jointly represented by a single attorney who was operating under a conflict of interest.

At trial, the victim testified that on March 19, 1981, she was 13 years old and lived in a foster home in Roseland. That evening she was walking with two boys when she noticed a car slowly following them. The driver, whom she identified at trial as Collins, yelled out her name and she approached the car. Collins told her that a friend of hers wanted to see her and he offered to drive her to the friend's house. The victim refused the ride and continued walking. Collins called her over a second time and pulled her into the car. She sat between him and a passenger, identified as Wiggins. The victim testified that she had never met either Wiggins or Collins. They invited her to "smoke a joint" with them but she refused. They drove to a house,

got out of the car and walked up to the door. The victim testified that Collins was holding her by the arm as they approached the door. The men knocked on the door which was opened by defendant Daniels, whom the victim had also never seen before.

They all went inside the house and the victim sat on a couch with Collins and Wiggins. She testified that Collins hit her in the face and grabbed her by the hair. He started to pull her into another room by her hair and she went with him. He pushed her onto a bed where she refused to undress and curled up into a ball. Collins removed her clothes. He then spread her legs and had intercourse with her. Next, Collins and Daniels held her legs open while Wiggins had intercourse with her. Daniels tried to put his penis in her mouth but she covered her face with her hands. He then put on a prophylactic and also had intercourse with her. The victim testified that she was crying while the men had intercourse with her and that when Daniels was on top of her, she said "Leave me alone, I am only 13." She stated that Daniels looked at her, snickered and continued to have intercourse with her. After this, Collins and Wiggins each had intercourse with her once more.

Collins then told the victim to get dressed and drove her to a corner near the foster home where she lived. She walked to the front of the house and was let in the door. She then fell down in the hallway and started crying. The police were called and she was taken to a hospital and examined. The next day, she identified Daniels and Wiggins from a police lineup, but she was uncertain of her identification of Collins at that time. It was stipulated that the victim was examined by a doctor who took a vaginal smear. The smear revealed the presence of spermatozoa. Her underwear did not reveal the presence of blood or recent damage.

Witnesses for the defense testified that they had seen the victim in the car with Collins and Wiggins on the evening in question. They stated that she voluntarily got into the car, and that she was smoking marijuana. Collins and Wiggins also testified that the victim got into the car voluntarily. They further testified that no force was used on the victim, either to get her into the car or to have intercourse with her.

While the jury was deliberating, the court found Collins and Wiggins not guilty of aggravated kidnaping. It also found that there was reasonable doubt as to whether the defendants forced the victim to have intercourse, and thus found them not guilty of rape. The court, found, however, that the defendants did not reasonably believe the victim to be 16 years of age or older, and found them guilty of inde-

cent liberties with a child.

The jury found Daniels guilty of rape and guilty of indecent liberties with a child. He was found not guilty of attempted deviate sexual assault. The court sentenced Wiggins to six years' imprisonment and Collins to eight years' imprisonment for indecent liberties with a child. Daniels was sentenced to 10 years' imprisonment for rape. His conviction for indecent liberties with a child merged with the rape conviction.

■■■ Daniels first contends that the trial court erred in instructing the jury that they could find him accountable for the rape by his codefendants when the same court later acquitted Collins and Wiggins of rape. A person is legally accountable for the conduct of another when either before or during the commission of an offense, and with the intent to promote or facilitate such commission, he solicits, aids, abets, agrees or attempts to aid such other person in the planning or commission of such offense. (Ill. Rev. Stat. 1981, ch. 38, par. 5—2(c).) Further, a person who is legally accountable for the conduct of another which is an element of an offense may be convicted upon proof that the offense was committed and that he was so accountable, even though the other person claimed to have committed the offense has not been prosecuted or convicted, or has been acquitted. (Ill. Rev. Stat. 1981, ch. 38, par. 5—3.) Even slight evidence upon the theory of accountability will justify the giving of an instruction on it. (*People v. Thomas* (1979), 72 Ill. App. 3d 28, 389 N.E.2d 1316.) Accountability instructions may be used even though the defendant is tried alone. *People v. Wilkerson* (1984), 123 Ill. App. 3d 527, 463 N.E.2d 139.

■■ In the instant case, there was evidence presented that Wiggins and Collins took the victim to Daniels' house and that Daniels helped hold her on the bed while his codefendants had intercourse with her. There was also testimony that Daniels himself had intercourse with her, even after she asked him to leave her alone. We find that the instructions in question were supported by the evidence.

■■ Daniels next contends that he was denied a fair trial because the prosecutor laid a foundation for the impeachment of Michaël Dukes without completing the impeachment. Daniels argues that the foundation implied that Dukes had made prior inconsistent statements to the prosecutor during an earlier telephone conversation regarding whether the victim had been forced into the car with Wiggins and Collins. Error is committed where a cross-examiner lays a foundation for impeachment of a witness in a manner which insinuates that the witness made prior inconsistent statements and does not subsequently present evidence that the statements were actually made. The fact

that error has occurred in this regard, however, does not alone carry the import that defendant was prejudiced and the conviction must be reversed. *People v. Strubberg* (1978), 61 Ill. App. 3d 521, 378 N.E.2d 191.

In support of his argument that reversal is mandated, defendant relies on *People v. Nuccio* (1969), 43 Ill. 2d 375, 253 N.E.2d 353. In *Nuccio*, the court stated:

"Where *** the guilt of the accused is not manifest, but is dependent upon the degree of credibility accorded by the trier of fact to his testimony and that of the witnesses who testify on his behalf, and there appear in the record substantial numbers of unsupported insinuations which, if considered, could have seriously impeached the credibility of the defendant and his witnesses, and there is no indication of the court's awareness of this impropriety even though it is brought to his attention, it is our opinion that justice and fundamental fairness demand that the defendant be afforded a new trial free from such prejudicial misconduct." (43 Ill. 2d 375, 396, 253 N.E.2d 353, 364.)

(See also *People v. Giangrande* (1981), 101 Ill. App. 3d 397, 428 N.E.2d 503.) Any such error in the instant case did not rise to the level discussed by the court in *People v. Nuccio* (1969), 43 Ill. 2d 375, 253 N.E.2d 353. Duke's testimony on direct examination essentially contended that the victim voluntarily got into the car with Collins and Wiggins. This corroborated Collins' and Wiggins' testimony and contradicted that of the victim. During the complained-of cross-examination, only three questions were asked regarding the telephone conversation about the use of force to get the victim into the car. This is hardly the substantial number of unsupported insinuations discussed by the *Nuccio* court.

Further, prior to rebuttal testimony, the court raised the issue of the potential conflict for the prosecutor in having to perfect the impeachment as a witness and, at the same time, prosecuting the case. Counsel and the court agreed that the testimony regarding the phone conversation would be stricken and the jury was so instructed. Such instructions have been held to cure any defect caused at trial. (*People v. Lewis* (1979), 73 Ill. App. 3d 951, 392 N.E.2d 707.) The error was harmless.

■ Finally, Daniels maintains that he was denied a fair trial by the impeachment of his codefendant Wiggins, which indicated that Daniels had intercourse with the victim. This testimony, however, was not objected to at trial, nor was it included in Daniels' post-trial motion. Failure to object to the admission of evidence constitutes a

waiver of that issue on appeal. *People v. Carlson* (1980), 79 Ill. 2d 564, 404 N.E.2d 199.

■ Wiggins and Collins first contend that the State failed to prove them guilty beyond a reasonable doubt of indecent liberties with a child because the victim allegedly appeared to be 16 years of age or older at the time of the offense. It is an affirmative defense to a charge of indecent liberties with a child that the accused reasonably believed the child was 16 years old or older at the time of the offense. (Ill. Rev. Stat. 1981, ch. 38, par. 11—4(c).) The in-court appearance of the victim is sufficient to rebut defendant's affirmative defense because the trier of fact has the best opportunity to observe the victim and assess the reasonableness of the defendant's belief. (*People v. Marchese* (1975), 32 Ill. App. 3d 872, 336 N.E.2d 795.) After a review of the record in this case, we cannot say that the trial court abused its discretion in determining that defendants could not reasonably believe the victim was at least 16 years of age.

■ Alternatively, Collins and Wiggins argue that their convictions should be reduced to the offense of contributing to the sexual delinquency of a minor. In support of their argument, they rely on *People v. Plewka* (1975), 27 Ill. App. 3d 553, 327 N.E.2d 457. In *Plewka*, the court found the application of the indecent liberties statute to be inappropriate and the penalties imposed thereunder unduly harsh, where the victim was 15 years old and sexually sophisticated and where there was no evidence the defendant had a tendency to sexually molest children. Defendant's conviction was, accordingly, reduced to contributing to the sexual delinquency of a minor.

*Plewka*, however, is distinguishable from the instant case. In *Plewka*, the court found that there was no force used and that the victim had been a willing participant. In this case, as previously noted, there was evidence presented that force was used to induce the victim to accompany the defendants and during intercourse. Further, the victim in the instant case was 13, not 15 and some months, as in the *Plewka* case. We thus find *Plewka* inapplicable to the instant case.

■ Finally, Collins and Wiggins maintain that in representing them both, their attorney was operating under a conflict of interest which deprived them of a fair trial. Since the defendants did not object to joint representation before, during or after trial, and did not raise the issue in their post-trial motion, they must establish that an "actual" conflict adversely affected their attorney's performance. (*Cuyler v. Sullivan* (1980), 446 U.S. 335, 64 L. Ed. 2d 333, 100 S. Ct. 1708.) The conflict may not be speculative or hypothetical. *People v. Berland* (1979), 74 Ill. 2d 286, 385 N.E.2d 649.

■ Defendants' claim of a conflict of interest results from pretrial statements by one defendant that a codefendant used force in seducing the victim. Defendants, however, were acquitted of the charges of aggravated kidnaping and rape where the issues of force and consent are relevant. Instead, they were convicted of indecent liberties with a child, an offense to which consent and force are immaterial. (*People v. Hernandez* (1980), 88 Ill. App. 3d 698, 412 N.E.2d 572.) The alleged conflict was thus not actual, and defendants were not prejudiced thereby.

For the foregoing reasons, the judgments of the circuit court of Cook County are affirmed.

Judgments affirmed.

WHITE, P.J., and RIZZI, J., concur.