THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* KARL PLEWKA *et al.*, Defendants-Appellants.

(Nos. 57934 & 57955, cons.;

First District (3rd Division)—April 3, 1975.

Frederick F. Cohn, of Chicago, for appellants.

Bernard Carey, State's Attorney, of Chicago (Patrick T. Driscoll, Jr., and Raymond Prosser, Assistant State's Attorneys, of counsel), for the People.

Mr. JUSTICE DEMPSEY delivered the opinion of the court:

Karl Plewka, 17 years of age, and Reginald Blakemore, 20, were indicted for the rape of, indecent liberties with and contributing to the sexual delinquency of a 15-year-old girl. (Ill. Rev. Stat. 1969, ch. 38, pars. 11—1, 11—4, 11—5.) They were tried without a jury, found not guilty of rape but convicted of indecent liberties and contributing to sexual delinquency. Plewka was sentenced to 4 to 8 years and Blakemore

to 5 to 12 years in the penitentiary. In a consolidated appeal, both defendants contend that they reasonably believed that the complaining witness was 16 years old on the day the alleged offenses occurred, an affirmative defense to the offense for which they were sentenced, indecent liberties with a child. Plewka also argues that the evidence was insufficient to convict him of either offense.

The complaining witness testified that she was raped by six young men including the two defendants on November 9, 1971. She said that she attended three morning classes that day at Tuley High School, Chicago, and then cut school about 11 A.M. when a schoolmate named Cheryl asked her to go to a get-together at Plewka's home. Plewka's mother and sister, with whom he lived, were not home but six or seven boys and about the same number of girls were there. The only persons the complainant knew were Plewka, Blakemore and a boy named Jerry Ybarra. She said that she and Cheryl stayed in the living room and that she drank a few sips of wine. Around 1 or 1:30 the young people began leaving the party but she and Cheryl stayed. She went to the washroom and then came back to the living room and talked with the boys who were there. The complainant asked where Cheryl was and was told that she was in the washroom but not to look for her. The complainant said she picked up her coat and started to leave, but the boys pushed her onto the couch and threatened to harm her if she did not have intercourse with them. She refused and was carried bodily into the bedroom by all six boys. She was thrown on the bed and while some boys held her, others removed her pants and undergarment. All the boys, including Plewka and Blakemore, had intercourse with her.

She testified that after they were through the boys helped her get dressed and handed her her coat. She left the house crying. She met Plewka's sister outside but said nothing about her experience. Cheryl was waiting for her, and she told her she had been raped. They walked to Cheryl's house and then to the home of Cheryl's boyfriend. He and they and two of his friends drove to the area of the Plewka apartment and then to the police station where the rape was reported. At a preliminary hearing, the complainant testified that she thought she left the apartment around 1:30, but at the trial she testified that she left there about 3 P.M. and reported the rape within an hour afterwards. The police officer on duty at the police station testified that the rape was reported at approximately 3:40 in the afternoon.

The complainant was examined by a doctor the same afternoon. His report stated that there were scratch marks between her breasts on her thighs. There was bleeding from lacerations of her hymen and spermatozoa were present.

Cheryl's testimony differed in some respects from that of the complainant. She said the complainant consumed about a pint of wine and also smoked some marijuana at the party, and at one point walked out of the living room with Ybarra. Cheryl left the party while the complainant was in the washroom. She left right after one boy threatened her. He told her she had better "give them some" or they were going to take it. She went to a corner store and returned to the apartment building about 15 minutes later, and saw the complainant as she came out. She was not crying but told Cheryl that she had been raped. She did not want to phone the police but did not say why. However, on the way to Cheryl's home they met some boys they knew and the complainant told them she had been raped. After driving around in the vicinity of the Plewka apartment they went to the police.

Blakemore's girlfriend, a girl named Luanne, testified that she attended the get-together and saw the complainant in the living room, dining room and the bedroom during the party. At one time the complainant went into the bedroom with Ybarra, and at another time she sat in there and talked with a group which included Luanne, Blakemore, Ybarra and one other boy. Luanne said that when she left the party, the complainant was still in the bedroom with the three boys.

Blakemore, who said that he was high from smoking marijuana, admitted that he tried to have intercourse with the complainant. He saw her in the bedroom when he went in there to change a phonograph record. He started to go into the bedroom a second time and was told by Ybarra to get out. He left but went back in shortly after that. Ybarra and two other boys were in the room and the complainant was lying on the bed with her clothes off from the waist down. Blakemore testified that he tried to have intercourse with her but was unable to, so he left the bedroom. The complainant came out about 15 to 20 minutes later.

Plewka denied having intercourse with the complainant. He testified that after sitting around and talking at the party, he went outside to walk his dog. Returning to the apartment about 20 minutes later, he saw her in the bedroom, lying on the bed with her underclothes off. He left the bedroom and sat down in the dining room. Cheryl, Luanne and one other girl were still in the apartment at the time. The complainant left the apartment about 1:30.

Section 11—4 of the Criminal Code provides that any person of 17 years or older who performs an act of sexual intercourse with a child under 16, commits indecent liberties. An affirmative defense to the crime is that the accused reasonably believed the child was of the age of 16 or upwards at the time of the act. Section 3—2 of the Criminal Code (Ill. Rev. Stat. 1971, ch. 38, par. 3—2), defines an affirmative defense:

"(a) 'Affirmative defense' means that unless the State's evidence raises the issue involving the alleged defense, the defendant, to raise the issue, must present some evidence thereon.

(b) If the issue involved in an affirmative defense is raised then the State must sustain the burden of proving the defendant guilty beyond a reasonable doubt as to that issue together with all the other elements of the offense."

Blakemore testified that he had met the complainant one time before the get-together and did not know how old she was on that day. He said that he would not have tried to have intercourse with her if he had known she was only 15. Plewka testified that he thought that the complainant was 16 or 17 at the time of the offense. He said that while he did not know her, he had seen her about a year before the get-together when she was at his house with one of his friends and at another time when they attended the same party. The complainant corroborated the defendants' testimony that they were only slightly acquainted. She testified that she had met Blakemore once or twice before the offense and had known Plewka for a few months and had been to his house once or twice before the party.

Blakemore's testimony that he would not have tried to have intercourse with the complainant if he had known she was 15 and Plewka's that he thought she was 16 or 17, barely met the statutory requirement that "some evidence" must be presented in order to raise an affirmative defense. (See *People v. Brown* (1971), 132 Ill.App.2d 875, 271 N.E.2d 395.) Neither explained why he thought she was more than 15 years old; neither described her appearance; neither claimed that she represented herself to be over 15 or related what others may have said about her age.

It appears from the testimony that the defendants, especially Plewka, had known Cheryl and Luanne for some time. These girls were only 15. Cheryl said she had known Plewka for 4 years and Blakemore for 2; Luanne said she had known Plewka for 4 years and Blakemore for 1. Cheryl testified that she figured (not that she knew) that the complainant was 15. Luanne, a defense witness, testified that she thought the complainant was 15 or 16 and that all the girls at the party were 15. She also said she believed that Plewka and Blakemore knew the complainant was 15 years old.

The decisive question is whether the defendants' asserted belief was reasonable. The trial court thought that it was not. The complainant was 5 feet, 3 inches tall and weighed 113 pounds at the time of the trial, which was held only 2 days before her 16th birthday, and was the same size on November 9, 1971. The court, who saw the girl and heard her testify, stated:

"I further find, so the record is clear, based on my observation of the complaining witness, to the listening of her testimony and of the testimony elicited by the parties in this case, that as a matter of fact, any beliefs which the accused might have had or might have shown that the child was of the age of 16 or upwards was unreasonable, and I so find, in the event there is an argument of affirmative defense raised."

■■ The court's determination that the defendants were unreasonable in thinking the complainant was 16 is adequately supported by the evidence. Likewise, the court's finding that the evidence proved beyond a reasonable doubt that both defendants had intercourse with the complainant is supported by the record. The conclusion which was drawn by the court from the unreasonable belief in age and the fact of intercourse, that the defendants were guilty of the offense of indecent liberties, cannot be criticized. However, we believe it must be examined in conjunction with the purpose of the statute defining the offense. (Ill. Rev. Stat. 1969, ch. 38, par. 11—4.) This statute was designed for the protection of the young and immature from the sexual advances of older individuals. The main emphasis of section 11—4, according to its drafting committee, is on

"* * * victimizing the child's immaturity, knowingly and deliberately. One who engages in a sexual act with another, believing honestly and reasonably that such other was of sufficient age to exercise discretion and mature judgment in the matter, may have overstepped the boundaries of acceptable conduct, but such an offender has not exhibited a dangerous propensity to victimize the immature." (Ill. Ann. Stat. ch. 38, § 11—4, Committee Comments (Smith-Hurd 1972).)

With this purpose in mind, affirmative defenses were provided for a person accused of violating this section, among them that of reasonable belief that the victim was of the age of 16 or upwards. This is the only section of the chapter dealing with sex offenses where affirmative defenses are provided. Mistaken knowledge of age is no defense to any other sex crime. The drafting committee felt that subjecting a person who makes a reasonable mistake as to whether a girl is 15 or 16 to felony penalties is "unduly harsh," and that such a person could be prosecuted under section 11—5 of the Criminal Code—contributing to the sexual delinquency of a child, where knowledge of age is no defense. The penalty for contributing is incarceration up to 1 year, a fine not to exceed $1,000, or both. The penalty for indecent liberties is from 4 to 20 years in the penitentiary.

■■ We may look to the Committee Comments in ascertaining the

purpose of the statute and its proper application. See *People v. Mueller* (1973), 54 Ill.2d 189, 295 N.E.2d 705 and *People v. Keegan* (1971), 52 Ill.2d 147, 286 N.E.2d 345, appeal dismissed and certiorari denied, 406 U.S. 964 (1972). Since the intent of the statute is to protect innocent children from the sexual advances of older persons who have a dangerous propensity to victimize the immature, its application to the facts of this case seems inappropriate.

The defendants were acquitted of rape. This can only mean that the trial court did not accept the complainant's story that the intercourse was against her will. The finding that she consented to the intercourse not only reflects on her credibility, it also has a bearing on the seriousness of the act between a willing female in her 16th year of life and a 17-year-old male. In accordance with the court's finding, we must assume that the complainant was not pushed down on the sofa, carried bodily into a bedroom, thrown onto the bed or held down by the six youths. Moreover, the evidence supports the conclusion that she was anything but immature in sexual experience. A boy who was not at the gathering in the Plewka home on November 9, 1971, testified that at another party "I heard somebody say she [the complainant] likes you. So I went up to her and talked to her. We started making out and then we winded up  *  *  *" in a bedroom where they had intercourse. Her friend Cheryl testified that at the Plewka party the complainant walked out of the living room with Jerry Ybarra. A short time later she and Ybarra were in the bedroom and when Blakemore tried to enter, Ybarra told him to get out. The complainant was not victimized. To the contrary, she seemed more than willing. Although all the other girls had left the party, she lingered on. She was not merely looking for adventure, she was eager for it.

■■■ Under the facts of this case, where the court disbelieved that the complainant yielded to force, where she was sexually sophisticated, where she was a few months short of 16 and may have looked that age, and where there was no evidence from which it could be inferred that either defendant had a tendency to sexually molest children, it is our conclusion that the application of the indecent liberties statute is inappropriate and the imposition of the minimum penalty of 4 years exacted by the statute is unduly harsh. We will, therefore, reduce the degree of the offense for which the defendants were convicted (Ill. Rev. Stat. 1969, ch. 110A, par. 615(b)(3)) from indecent liberties to contributing to the sexual delinquency of a child, and will remand the cause with directions to the court to sentence them for that offense.

Convictions affirmed, sentences vacated, offense reduced, and cause remanded with directions.

McGLOON, P. J., and McNAMARA, J., concur.